Walter H. LANE, M.D. *v.* Maxine Payton LANE

87-293                                      752 S.W.2d 25

Supreme Court of Arkansas
Opinion delivered June 6, 1988

672

*Tatum & Sullivan, P.A.*, by: *Tom Tatum*, for appellant.

*Peel, Eddy & Gibbons*, by: *Richard L. Peel*, for appellee.

STEELE HAYS, Justice. In this medical malpractice case the only question on appeal pertains to the statute of limitations.

Appellant, Walter Lane, a physician, began treating Maxine Lane, appellee, for migraine headaches in 1966 and continued treating her until 1984. The two were married in 1974 and divorced in 1985. Mrs. Lane sued Dr. Lane in May, 1985 for malpractice for injuries received as a result of his treatment. Prior to trial, Dr. Lane moved for summary judgment claiming the action was barred by the statute of limitations. The motion was denied. At the close of the evidence, Dr. Lane moved for a directed verdict and asked the court to reconsider summary judgment based on the statute of limitations. The court denied both motions and a jury awarded Mrs. Lane $44,000.

After the verdict, Dr. Lane moved for judgment NOV, seeking a reduction to $13,000 to conform with the evidence of damages by Mrs. Lane. Mrs. Lane objected to a remittitur and elected to have a new trial. By this appeal Dr. Lane challenges the denial of summary judgment and directed verdict on the issue of statute of limitations.

Dr. Lane's treatment of Mrs. Lane's migraine headaches from 1966 to 1984 included regular injections of narcotics of one type or another. Mrs. Lane alleged the treatment was injurious, causing fibrosis of the shoulder, loss of motion of her arm, extensive scarring of her back, arms, and shoulders, drug addiction, drug dependency, drug abuse, depression and loss of ability to carry on a normal lifestyle.

Our statute of limitations for medical malpractice, Ark. Code Ann. § 16-114-203 (1987) [Ark. Stat. Ann. § 34-2616 (Repl. 1962)] provides that:

> (a) All actions for medical injury shall be commenced within two years after the cause of action accrues. (b) The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time . . .

Ark. Code Ann. § 16-114-201(3) (1987) [Ark. Stat. Ann. § 34-2613(c) (Repl. 1962)] defines "medical injury":

> "Medical injury" or "injury" means any adverse consequence arising out of or sustained in the course of the professional services being rendered by a medical care provider, whether resulting from negligence, error or omission in the performance of such services; or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

Dr. Lane maintains the evidence shows that Mrs. Lane's drug addiction and scarring began by 1978 and therefore the action is barred by the statute of limitations. Mrs. Lane counters the argument with the "continuing course of treatment" theory. The trial court ruled against Dr. Lane on this issue, finding that the action fell within the statute of limitations.

The theory of "continuous treatment" is defined:

> [I]f the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature

as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated—unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

1 D. Louisell and H. Williams, *Medical Malpractice* § 13.08 (1982) (footnotes omitted).[1]

■ "Continuous treatment" is distinguishable from a "continuing tort." See *Williams* v. *Edmondson*, 257 Ark. 837, 250 S.W.2d 260 (1975); *Owen* v. *Wilson*, 260 Ark. 21, 537 S.W.2d 543 (1976); *Treat* v. *Dreutzer*, 290 Ark. 532, 720 S.W.2d 716 (1986). In *Owen* and *Treat*, the appellants argued that a single negligent act of a physician, a misdiagnosis for example, was a continuing wrong and the statute of limitations would not begin to run until the error was discovered, on the premise that the effect of the wrong was continuous. We declined to adopt that theory, holding the cause of action to accrue at the time of the wrongful act, reasoning that the proposed theory, a public policy issue, should be addressed by the legislature.

To hold otherwise would mean in effect that we would apply the "discovery of injury rule"[2] to our malpractice statute, which would change the time of the accrual of a cause of action from the time of the act to the date of discovery of the injury. This is contrary to the legislative intent plainly expressed in our statute. The limitation begins to run from the "date of the wrongful act complained of and no other time." Ark. Code Ann. § 16-114-203 (1987).

---

[1] "Although the word 'discovery' is used in these cases, the principle differs from that of the true discovery doctrine. This type of discovery operates to the disadvantage of the plaintiff since it shortens the time allowable for him to sue, whereas the typical discovery rule operates to the disadvantage of the defendant, since it lengthens the time for plaintiff to sue." 1 D. Louisell and H. Williams, *Medical Malpractice* § 13.08 n. 89 at 13-36 (1982).

[2] The discovery rule finds that the cause of action accrues at the time the wrong was or should have been discovered, rather than at the time of the wrongful act. See, 1 D. Louisell and H. Williams, *Medical Malpractice* § 13.08 (1982).

In contrast to the so-called continuing tort theory, based on a single negligent act, the continuous treatment doctrine becomes relevant when the medical negligence consists of a series of negligent acts, or a continuing course of improper treatment. The basis for the doctrine is sound.

> The so-called "continuous treatment" rule has been defended on the grounds of fairness as well as on the basis of logic. Certainly it would not be equitable to bar a plaintiff, who for example, has been subjected to a series of radiation treatments in which the radiologist negligently and repeatedly administered an overdosage, simply because the plaintiff is unable to identify the one treatment that produced his injury. Indeed, in such a situation no single treatment did cause the harm; rather it was the result of several treatments, a cumulative effect. From the point of view of the physician, it would seem reasonable that if he had made a mistake, a misdiagnosis for example, he is entitled to the opportunity to correct the error before harm ensues. And, as one court has put it, "It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician.

D. Louisell & H. Williams, *supra*.

Since 1940, there has been a steady trend toward judicial acceptance of the continuing treatment approach. D. Louisell & H. Williams, *supra*; and 2 Pegalis and Wachsman, *American Law of Medical Malpractice* § 6:7 (1981), gives this summary:

> This circumstance is usually dealt with in each state by the so-called 'continuous course of treatment' doctrine. Generally, the cause of action would accrue at the end of a continuous course of medical treatment for the same or related condition even if the negligent act or omission has long since ended.

Jurisdictions adopting the doctrine include *Metzger* v. *Kalke*, 709 P.2d 414 (Wyo. 1985); *Skoglun* v. *Blandkenship*, 134 Ill. App. 3d 628, 481 N.E.2d 47 (1985); *Vinklarek* v. *Cane*, 691 S.W.2d 108 (Tex. Civ. App. 1985); *Sheldon* v. *Sisters of Mercy Health Corp.*, 102 Mich. App. 91, 300 N.W.2d 746 (1980); *Tamminen* v. *Aetna Casualty & Surety Co.*, 109 Wis. 2d 536,

327 N.W.2d 55 (1982); *Lynch* v. *Foster*, 376 So. 2d 342 (La. 1979); *Farley* v. *Goode*, 219 Va. 969, 252 S.E.2d 594 (1979); *Samuelson* v. *Freeman*, 75 Wash. 2d 904, 454 P.2d 406 (1969); *Frazor* v. *Osborne*, 57 Tenn. App. 10, 414 S.W.2d 118 (1966); *Waldman* v. *Rohrbaugh*, 241 Md. 137, 215 A.2d 825 (1966); *Borgia* v. *City of New York*, 12 N.Y.2d 151, 187 N.E.2d 777, 237 N.Y.S.2d 319 (1962); *Hundley* v. *St. Francis Hospital*, 161 Cal. App. 2d 800, 327 P.2d 131 (1958); *Thatcher* v. *De Tar*, 351 Mo. 603, 173 S.W.2d 760 (1943); *Hotelling* v. *Walther*, 169 Or. 559, 130 P.2d 944 (1942); *Williams* v. *Elias*, 140 Neb. 656, 1 N.W.2d 121 (1941); *Schmit* v. *Esser*, 183 Minn. 354, 236 N.W. 622 (1931).

■ Even a jurisdiction which has adhered to the "time of injury rule" for the accrual of a cause of action for medical malpractice, has recognized this theory. Thus, in *Farley* v. *Goode, supra*, the Virginia court found the continuous treatment rule applicable in that instance, recognizing that the treatment should be looked at in its entirety and that within the context of the limitation problem the cause of action was "coextensive with the tortious conduct and that the whole transaction was inherently negligent." Given the rationale behind the rule, and its growing acceptance, we believe its application in appropriate circumstances is proper. Here, there is no question that Mrs. Lane's cause of action falls within this doctrine, nor does Dr. Lane dispute this point. In fact, Dr. Lane tacitly concedes the treatment was improper. The treatment, which began in 1966, was terminated in July 1984 and the action was brought in May, 1985, well within the statute of limitations.

■ Dr. Lane contends however that Mrs. Lane's addiction was evident in 1978 and that she was aware of the scarring in 1979. It is not enough, however, that Mrs. Lane was aware of an injury. Dr. Lane must show that she knew or should have known there was a wrong. The injury may be readily apparent but the fact of the wrong may lay hidden until after the prescribed time has passed. *Lopez* v. *Sawyer*, 62 N.J. 267, 300 A.2d 563 (1973). "In many cases [the plaintiff] will or should know at the time of or soon after the wrongful act that he has been the victim of negligent medical care; in other settings of fact it may be impossible for him, as a layman, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been

done him." *Waldman* v. *Rohrbaugh, supra.* To this same effect, *see generally*, 61 Am. Jur. 2d, Physicians § 321 (1981).

■ Under the facts in this case, we cannot say the trial court was wrong. Initially we note that Dr. Lane has incorrectly characterized the evidence as to Mrs. Lane's addiction. There was no testimony that at some given point, she became addicted. In fact, the testimony cited by Dr. Lane underscores the difficulty of determining at what point Mrs. Lane became addicted. In any case, the witnesses could only say that after some point in time, about 1979, that appellee was in fact addicted. There is no evidence Mrs. Lane knew her condition was attributable to malpractice. And while it might be argued that she must have realized she was drug-dependent, we cannot say she knew the cause of her condition in a legal sense. Absent any testimony, expert or otherwise, on Mrs. Lane's knowledge of her addiction or its cause, particularly where her dependency occurred at the hands of a physician and was perpetuated by his treatment, we cannot say she knew, or should have known, the treatment constituted medical malpractice. Furthermore, we are not inclined to hold that a physician, aware of a patient's drug dependency, may nurture the habit and continue to be the provider over a period of years and then successfully contend the patient should have brought the action earlier.[3]

■ Similarly, while Mrs. Lane was aware of the scarring in 1979, there was no evidence she knew at the time it was due to negligence by Dr. Lane, nor anything to suggest she should have known it was other than a necessary consequence of the treatment she was receiving for her migraine headaches.

The trial court was correct in refusing to find the statute of limitations was a bar to the action in this case.

Affirmed.

---

[3] The evidence showed that Dr. Lane was aware of Mrs. Lane's dependency, prior to 1980, that in 1984 Dr. Lane did refuse to continue Mrs. Lane's treatment, and it was shortly after that that she sought outside help for drug-related problems.