951 F.2d 351
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dottie WILSHIRE, Plaintiff/Appellant,
v.
Judy RICHEY, M.D., and The Howard Clinic, Defendants/Appellees.
 No. 90-6542.
 United States Court of Appeals, Sixth Circuit.
 Dec. 10, 1991.
 
 1
 Before NATHANIEL P. JONES and SUHRHEINRICH, Circuit Judges, and TODD, District Judge.*
 
 
 2
 TODD, District Judge.
 
 
 3
 Plaintiff Dottie Wilshire appeals the district court's grant of summary judgment for Defendants Judy Richey, M.D., and The Howard Clinic in this diversity medical malpractice claim for the negligent prescription of addictive drugs. Plaintiff argues that the district court erred when it ruled that the one year statute of limitations for medical malpractice actions under Kentucky Revised Statutes Annotated § 413.140(2) had expired. Because we predict that the Kentucky Supreme Court would hold that the statute of limitations for the negligent prescription of addictive medication does not begin to run while the patient continues to receive prescriptions for the addictive medication, we reverse.
 
 
 4
 Plaintiff Wilshire came under the care of Defendant Dr. Richey in 1979. Dr. Richey prescribed medications, including Seconal, Valium, and Tylenol # 4 (which contains Codeine) as treatment for Wilshire's various medical problems. These controlled medications are addictive, and Wilshire displayed signs of addiction as early as 1985.
 
 
 5
 During November and December of 1985, Wilshire made three visits to Dr. David Rankin concerning the conditions for which she was taking the medications prescribed by Dr. Richey. The first visit to Dr. Rankin resulted in Wilshire's removal from Seconal and Valium. Wilshire requested a return to Seconal during her second visit, but Dr. Rankin refused because of its addictive nature. Dr. Rankin also noted in Wilshire's file that she was "probably already addicted to Seconal, Codeine and Valium." During the third visit, Dr. Rankin advised Wilshire that she should consult a psychologist or psychiatrist for help with her problems and with getting off her prescribed medications. Dr. Rankin testified in the district court that he was "certain" that he told Wilshire that she was addicted to the medications, but he qualified that statement by saying that he "[couldn't] be 100% sure that he told her that." Wilshire testified that Dr. Rankin's statement of reason for removing her from the medication was that she "didn't need it" rather than that she was addicted.
 
 
 6
 Wilshire continued under the care of Dr. Richey until April 14, 1988, and received her final prescription for medication on April 11, 1988. On April 14, 1988, after her brother insisted that she was addicted to the prescribed medications, Wilshire entered a drug treatment program. Wilshire filed her complaint against Defendants on April 10, 1989.
 
 
 7
 Defendants moved for summary judgment on the basis that Kentucky's one year statute of limitations for medical malpractice had run. KEN.REV.STAT.ANN. § 413.140(2). Defendants presented testimony from Dr. Rankin, Wilshire's sister-in-law (a registered nurse), and Wilshire's pharmacist as evidence of the fact that Wilshire knew or should have known prior to April 10, 1988, that she was addicted to the prescribed medication. The sister-in-law testified that Wilshire's addiction was evident to family members, and the pharmacist testified that he had talked with Wilshire about getting off some of the medication, but neither witness had ever told Wilshire specifically that she might be addicted to the medication. Based on the testimony of qualified "certainty" by Dr. Rankin, the district court found that Wilshire knew, or should have known, of her addiction in 1985. Therefore, the court concluded that the statute of limitations had run prior to Wilshire's action and summary judgment was granted. Wilshire's claim on appeal is that the district court erred in holding that Wilshire should have known of her addiction while she was still receiving prescriptions for the addictive medications.
 
 
 8
 Because this action is based on diversity jurisdiction and involves the application of Kentucky law, the responsibility of this court is to determine and apply Kentucky law. Tennessee River Pulp and Paper Co. v. Eichleay Corp., 708 F.2d 1055, 1057 (6th Cir.1983). See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). If Kentucky law is not clearly defined on the issues involved in this case, the court must "forecast as best [it] can from available sources what the Supreme Court of the state would do if presented with the same issue." Orfield v. International Harvestor Co., 535 F.2d 959, 965 (6th Cir.1976).
 
 
 9
 Kentucky has not expressly considered the effect of a continuing course of treatment upon the statute of limitations in medical malpractice cases. Prior cases considering the question of accrual of a cause of action for medical malpractice held that the statute of limitations began to run when the negligence was discovered. See Tomlinson v. Siehl, 459 S.W.2d 166 (Ky.Ct.App.1970). In adopting the discovery rule, however, the Tomlinson court quoted the following language from a California case which appears to favor the continuous course of treatment doctrine:
 
 
 10
 while the physician-patient relation continues the patient is not ordinarily put on notice of the negligent conduct of the physician upon whose skill, judgment and advice he continues to rely.
 
 
 11
 Id., at 167-168 (quoting Myers v. Stevenson, 270 P.2d 885, 887 (Cal.Ct.App.1954). See also Hundley v. St. Francis Hospital, 327 P.2d 131, 135 (Cal.Ct.App.1958). While this language was adopted in the context of the discovery rule and does not provide clear precedent for adoption of the continuous course of treatment doctrine, it carries essentially the same meaning, that is, the cause of action of a patient against a negligent physician should not accrue until the end of the entire course of treatment.
 
 
 12
 Defendants contend that two cases decided by this court have established Kentucky law on the issue, precluding the adoption of the continuous course of treatment doctrine in a Kentucky diversity case. Defendants' reliance on these cases, however, is misplaced. Neither Hall v. Musgrave, 517 F.2d 1163 (6th Cir.1975) nor Hicks v. Hines, Inc., 826 F.2d 1543 (6th Cir.1987) involved a situation where there was a continuing course of treatment within a physician-patient context. In Hall, no physician-patient relationship had existed between the plaintiff and the defendants for 22 months prior to the filing of the suit. 517 F.2d at 1164-65, 1167. In Hicks, there was no physician-patient relationship at all. The plaintiff's suit was against a former employer, and the employer-employee relationship was terminated long before the injury manifested itself. 826 F.2d at 1544.
 
 
 13
 With no clear Kentucky precedent, we must predict how the Supreme Court of Kentucky would rule on the issue. Orfield v. International Harvestor Co., supra. Besides the language in Tomlinson, supra, we find persuasive the apparent trend among Kentucky's sister states in the Sixth Circuit, which have all adopted the continuous course of treatment doctrine for medical malpractice causes of action. See Morgan v. Taylor, 451 N.W.2d 852 (Mich.1990); Stone v. Hamblin, No. 12846, 1987 WL 10336 (Ohio Ct.App. Apr. 22, 1987); Vail v. Townsend, 504 N.E.2d 1183 (Ohio Ct.App.1985); Higgins v. Estate of Crecraft, 1991 WL 20387 (Tenn.Ct.App. Feb. 21, 1991).
 
 
 14
 Other states have dealt with facts very similar to those in this case. In Adams v. Allen, 783 P.2d 635 (Wash.Ct.App.1989), a medical malpractice action was filed in 1986 alleging negligent prescription of addictive painkillers from 1974 to 1985. The trial court concluded that the patients knew of their addiction as early as 1977 or 1978, and that they were actually told of possible addiction in 1982. Id. at 638. The defendant's motion for summary judgment was granted on the grounds that the action was barred by the statute of limitations, but the appellate court reversed, relying on the continuing course of treatment theory. The court found that each prescription written by the defendant in excessive quantities or without informing the patients of the risks was a "separate wrongful act for purposes of the statute of limitations." Id. at 639.
 
 
 15
 The Arkansas Supreme Court reached a similar result in Lane v. Lane, 752 S.W.2d 25 (Ark.1988). The Lane court upheld the patient's claim that a continuing course of treatment tolled the statute of limitations, reasoning that the defendant could not show merely that the plaintiff was aware of an injury; rather, the defendant must show that the plaintiff "knew or should have known there was a wrong." Id. at 28. As the plaintiff's drug addiction resulted from a physician's treatment, the court found that it could not say the plaintiff knew or should have known of the malpractice. Id.
 
 
 16
 The court in Ballenger v. Crowell, 247 S.E.2d 287 (N.C.Ct.App.1978), also considered the issue of whether a medical malpractice action based on negligent prescription of addictive drugs was barred by the statute of limitations. Like the courts in Adams and Hicks, the Ballenger court adopted the continuous course of treatment doctrine and reversed the trial court's grant of summary judgment. The court found that, although the plaintiff was aware of his addiction, the cause of action did not accrue until the earlier of the time the plaintiff became aware that the treatment he was receiving was unnecessary to relieve his ailment, or the time at which the physician-patient relationship terminated. Id. at 294. The court also rejected any claim of contributory negligence on the patient's part, stating that "(t)he fact that the patient ... continues in the doctor's care and knowingly continues his addiction will not make him contributorily negligent unless he himself is doing something wrong or unless he knows his doctor is negligent." Id. at 291.
 
 
 17
 The trend now evident in other states and the language cited approvingly by the Kentucky Court of Appeals in Tomlinson, supra, lead us to conclude that the Supreme Court of Kentucky would adopt the continuous course of treatment doctrine. Therefore, in an action alleging negligent prescription of addictive medication, the statute of limitations is tolled during treatment which includes further prescription of the addictive medication. The patient's cause of action will not accrue until the last day of treatment.
 
 
 18
 Since the statute of limitations was tolled during the time Wilshire was treated by Dr. Richey, the district court's grant of summary judgment on the grounds that the action was barred by the statute of limitations is REVERSED, and the action is REMANDED for further proceedings.
 
 
 19
 SUHRHEINRICH, Circuit Judge, dissenting.
 
 
 20
 I would respectfully dissent from the majority in this matter. There is no question that plaintiff knew or should have known she was receiving addictive drugs. Plaintiff had sought the care of another physician, knew of the addiction from a variety of sources, and returned to the defendant as her source of addictive drugs. I do not believe that Kentucky, under these circumstances, would adopt the "continuous treatment rule". I would, therefore, adopt the district court's opinion in this matter and dismiss this claim.
 
 
 
 *
 The Honorable James D. Todd, United States District Judge for the Western District of Tennessee, sitting by designation