James Dow PLEDGER
and the Estate of Barbara J. Pledger, Deceased  *v.*
Garreth CARRICK, M.D.

04-1252                                                           208 S.W.3d 100

Supreme Court of Arkansas
Opinion delivered May 5, 2005

[Rehearing denied June 9, 2005.]

*Milligan Law Offices*, by: *Phillip J. Milligan*, for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, L.L.P.*, by: *J. Michael Cogbill*, and *Rebecca D. Hattabaugh*, for appellees.

JIM HANNAH, Chief Justice. Appellants James Dow Pledger and the Estate of Barbara J. Pledger (Mr. Pledger) appeal the order of the Franklin County Circuit Court granting summary judgment to appellees Garreth R. Carrick, M.D., and Cooper Clinic, P.A., on the ground that the statute of limitations expired prior to the filing of this medical malpractice claim involving the death of his wife. Mr. Pledger argues that the circuit court erred in not applying the continuous-treatment doctrine to toll the statute of limitations. We reverse and remand.

Affidavits and pleadings before the circuit court revealed these facts. Dr. Carrick first saw Barbara Pledger, the decedent, in 1998 after Ms. Pledger was injured in a slip-and-fall accident. On February 8, 2000, Ms. Pledger first presented with complaints of abdominal pain. Dr. Carrick diagnosed Ms. Pledger's condition as diverticulitis and prescribed a course of antibiotics as treatment. Ms. Pledger next complained of abdominal pain on April 17, 2000, and Dr. Carrick again prescribed antibiotics to treat diverticulitis. On January 10, 2001, Dr. Carrick saw Ms. Pledger in his office. According to Dr. Carrick, Ms. Pledger's chief complaint at that visit was related to her continued restless legs syndrome. However, Ms. Pledger's medical records reveal that she indicated that she was having epigastric pain, and that Dr. Carrick advised her to try Gas-X tablets. In addition, the medical records for that visit contain a notation that if the tablets did not resolve the problem, "we will have to do a complete exploration of the lower bowel."

Ms. Pledger next complained of abdominal pain on May 1, 2001. Dr. Carrick again prescribed antibiotics for diverticulitis, and he also ordered a CT scan of Ms. Pledger's colon to rule out other causes of her complaints. The CT scan was performed on May 4, 2001. The results of the CT scan indicated a "possibility of . . . an an[n]ular constricting mass and/or some mild inflammatory changes surrounding the colon."

On May 11, 2001, Ms. Pledger was admitted as a patient complaining with abdominal pain to St. Edward Mercy Medical Center in Fort Smith. During her hospitalization, Ms. Pledger was diagnosed with colon cancer, and she underwent surgical treatment. Ms. Pledger was discharged from the hospital on May 24, 2001. Dr. Carrick did not treat Ms. Pledger in reference to abdominal complaints or colon cancer after the May 1, 2001, office visit.

Ms. Pledger died on November 8, 2002. The primary cause of Ms. Pledger's death, as stated on the death certificate, was colon cancer. On April 7, 2003, Mr. Pledger filed a medical malpractice suit against Dr. Carrick and the Cooper Clinic. Mr. Pledger alleged that Dr. Carrick misdiagnosed Ms. Pledger with diverticulitis and failed to order the appropriate tests to diagnose colon cancer. Mr. Pledger further alleged that "for a period of approximately 15 months until Ms. Pledger's admission to St. Edward Mercy Medical Center on May 11, 2001, Defendant, Cooper Clinic and separate Defendant, Dr. Garreth R. Carrick, continuously treated Ms. Pledger for the misdiagnosed diverticulitis condition."

Dr. Carrick and the Cooper Clinic filed a motion for summary judgment, arguing that the continuous-treatment doctrine did not apply, and that Mr. Pledger's claims were barred by the statute of limitations. The circuit court agreed and granted the motion for summary judgment in favor of Dr. Carrick and the Cooper Clinic. From that order, Mr. Pledger appeals.

*Standard of Review*

The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Dodson v. Taylor*, 346 Ark. 443, 57 S.W.3d 710 (2001). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading this defense. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). However, once it is clear from the face of the complaint that the action is barred by the applicable statute of limitations period, the

burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Id.*

### Continuous-Treatment Doctrine

The statute of limitations for medical malpractice actions provides in part:

> (a) Except as otherwise provided in this section, all actions for medical injury shall be commenced within two (2) years after the cause of action accrues.

> (b) The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time.

Ark. Code Ann. § 16-114-203 (Supp. 1999).

Mr. Pledger's sole argument on appeal is that the continuous-treatment doctrine applies to his case and, as such, his action was improperly dismissed by the circuit court. In 1988, this court first recognized the continuous-treatment doctrine, which tolls the two-year statute of limitations for medical malpractice actions until the medical treatment is discontinued. *See Lane v. Lane,* 295 Ark. 671, 752 S.W.3d 25 (1988). In that case, Dr. Lane had given narcotic injections to his wife over the course of many years to treat her migraine headaches. As a result of the injections, Ms. Lane suffered scarring and drug addiction. The parties divorced and, subsequently, Ms. Lane sued Dr. Lane for medical malpractice. Dr. Lane contended that Ms. Lane could not recover for negligent acts alleged to have occurred more than two years prior to the filing of the action. We noted that some of the injections had been administered within the two-year period, and we applied the continuous-treatment doctrine to hold that damages could be recovered for the injury even though some of the allegedly negligent acts occurred outside the statutory period.

In *Lane,* we noted that the "theory of continuous treatment" is defined as follows:

> [I]f the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the

particular disease or condition involved has terminated — unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

*Lane*, 295 Ark. at 673-74, 752 S.W.2d at 26-27 (quoting 1 D. Louisell and H. Williams, *Medical Malpractice* § 13.08 (1982)). Further, we stated:

> . . . [T]he continuous treatment doctrine becomes relevant when the medical negligence consists of a series of negligent acts, or a continuing course of improper treatment. The basis for the doctrine is sound.
>
>> The so-called "continuous treatment" rule has been defended on the grounds of fairness as well as on the basis of logic. Certainly it would not be equitable to bar a plaintiff, who for example, has been subjected to a series of radiation treatments in which the radiologists negligently and repeatedly administered an overdosage, simply because the plaintiff is unable to identify the one treatment that produced his injury. Indeed, in such a situation no single treatment did cause the harm; rather it was the result of several treatments, a cumulative effect. From the point of view of the physician, it would seem reasonable that if he had made a mistake, misdiagnosis for example, he is entitled to the opportunity to correct the error before harm ensues. And, as one court has put it, "It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician."
>
> *Louisell & H. Williams, supra.*

*Lane*, 295 Ark. at 675, 752 S.W.2d at 27.

In *Lane*, we were careful to explain that "continuous treatment" is distinguishable from a "continuing tort." *Id.* at 674, 752 S.W.2d at 27 (citing *Williams v. Edmondson*, 257 Ark. 837, 520 S.W.2d 260 (1975)); *Treat v. Kreutzer*, 290 Ark. 532, 720 S.W.2d 716 (1986); *Owen v. Wilson*, 260 Ark. 21, 537 S.W.2d 543 (1976). In *Lane*, we stated:

> In *Owen* and *Treat*, the appellants argued that a single negligent act of a physician, a misdiagnosis for example, was a continuing wrong

and the statute of limitations would not begin to run until the error was discovered, on the premise that the effect of the wrong was continuous. We declined to adopt that theory, holding the cause of action to accrue at the time of the wrongful act, reasoning that the proposed theory, a public policy issue, should be addressed by the legislature.

To hold otherwise would mean in effect that we would apply the "discovery of injury rule" to our malpractice statute, which would change the time of the accrual of a cause of action from the time of the act to the date of discovery of the injury. This is contrary to the legislative intent plainly expressed in our statute. The limitation begins to run from the "date of the wrongful act complained of and no other time." Ark. Code Ann. § 16-114-203 (1987).

*Lane*, 295 Ark. at 674-75, 752 S.W.2d at 27.

This court has found the continuous-treatment doctrine to be applicable in one case since *Lane. See Taylor v. Phillips*, 304 Ark. 285, 801 S.W.2d 303 (1990). In that case, James B. Phillips, an oral surgeon, performed surgery on George Taylor and placed Taylor's jaw in a brace which was screwed into the bone parts. During subsequent follow-up visits with Dr. Phillips, Taylor complained of various problems with the brace. At one point during the treatment, Dr. Phillips physically repositioned the brace and advised Taylor to wear the brace for an additional eight to ten weeks. Approximately one month later, Taylor again complained about his jaw, and Dr. Phillips advised him that further surgery would be needed. In the meantime, on December 8, 1987, Taylor consulted with Dr. Phillips's partner, who took x-rays of the jaw and manually repositioned the jaw bones after cutting the brace. Dr. Phillips consulted with his partner and both agreed that further surgery in the form of a bone graft operation was indicated.

Taylor subsequently sued Dr. Phillips for medical malpractice on October 16, 1989. We held that the continuous-treatment doctrine applied, stating:

In this case, Taylor was clearly under a continuing course of treatment by Phillips, and so the statute did not begin to run until Taylor's treatment terminated on December 9, 1987. Taylor still had the brace screwed into his jaw bones on December 9 when Phillips and his partner agreed that Taylor needed further surgery on his jaw. Taylor's complaint against Phillips was filed on October 16, 1989, well within the statute of limitations.

To hold otherwise might require a plaintiff to bring suit against his or her physician before treatment is even terminated. This could conceivably afford the physician a defense that a patient left before treatment was terminated and before the physician had a chance to effectuate a proper result.

*Taylor*, 304 Ark. at 289, 801 S.W.2d at 305. In contrast to the *Lane* and *Taylor* cases, both of which involved allegations of a series of negligent acts or a continuing course of treatment, this court has consistently found the continuous-treatment doctrine to be inapplicable to claims based on single, isolated acts of negligence. *See Raynor v. Kyser*, 338 Ark. 366, 993 S.W.2d 913 (1999); *Wright v. Sharma*, 330 Ark. 704, 956 S.W.2d 191 (1997); *Pastchol v. St. Paul Fire & Marine Ins. Co.*, 326 Ark. 140, 929 S.W.2d 713 (1996); *Tullock v. Eck*, 311 Ark. 564, 845 S.W.2d 517 (1993). *See also Baker v. Radiology Associates, P.A.*, 72 Ark. App. 193, 35 S.W.3d 354 (2000).

In his response to the motion for summary judgment, Mr. Pledger argued:

At this time summary judgment is premature. The Defendants have requested depositions of Plaintiff's competent medical experts regarding the standard of care and causation of Ms. Pledger's death. Of particular importance in the determination of when the Continuous Treatment Doctrine applies is the standard of care issue when reviewed in the context of the 15 months of continuing treatment of Ms. Pledger for diverticulitis prior to her death now known to have been caused by colon cancer. Since Defendants argue that this is simply another case of one act of negligence, the importance of Plaintiff's standard of care expert opinion is so noted. For purposes of responding to the summary judgment motion of Defendants, it is Plaintiff's informed belief that there is no single date of when negligen[ce] and thus a breach of the standard of care occurred. The standard of care issue is simply that during the 15 month treatment additional medical courses of conduct should have been undertaken to rule out more serious ailments such as colon cancer. This is an ongoing learning curve, but at some point during treatment, additional medical care should have been rendered including referral for proper testing. It then largely becomes an issue of causation.

Mr. Pledger's contention that summary judgment is premature is well taken. In *First National Bank v. Newport Hospital & Clinic, Inc.*, 281 Ark. 332, 663 S.W.2d 742 (1984), a medical malpractice

action, the plaintiff alleged that the defendants were negligent in failing to diagnose and treat a fractured femur. The plaintiff had the burden of proving, by expert testimony, that her injuries were caused by the failure of the defendants to exercise the degree of skill and learning possessed by other physicians engaged in the same kind of practice in similar localities. The trial court granted the defendants' motion for summary judgment based on the lack of expert testimony to support the plaintiff's claims prior to the defendants producing medical records which the plaintiff had requested during discovery.

On appeal, the appellees argued that summary judgment was proper because the appellant had failed to meet her burden of proving medical malpractice. We stated:

> That may be so, but before being required to fully demonstrate that evidence in response to a motion for summary judgment a plaintiff is entitled to have the benefit of adequate discovery from the opposing parties as the nature of the case requires. Those benefits were withheld in this case and the trial court should not have granted summary judgment until appellant was able to complete discovery and develop, if obtainable, the necessary proof. In *Palmer v. Chamberlin, et al*, 191 F.2d 532 (5th Cir. 1951), the Court of Appeals cautioned against the untimely granting of summary judgment under Rule 56:
>
>> However, before rendering judgment the Court must be satisfied not only that there is no issue as to any material fact, but also that the moving party is entitled to a judgment as a matter of law. Where, as in this case, the decision of a question of law by the Court depends upon an inquiry into the surrounding facts and circumstances, the Court should refuse to grant a motion for a summary judgment until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law.

*First National Bank*, 281 Ark. at 335-36, 663 S.W.2d at 743-44.

In the instant case, Mr. Pledger was not denied discovery from the opposing parties; however, he was denied the benefit of completing the discovery that, in his opinion, would have allowed him to develop, if obtainable, the necessary proof in this case. To prove that the continuous-treatment doctrine tolled

the statute of limitations in this case, Mr. Pledger had the burden of proving that Dr. Carrick's treatment of Ms. Pledger's abdominal pain was treatment of a continuing course, and that Ms. Pledger's condition was of such a nature as to impose on Dr. Carrick a duty of continuing treatment and care. Without the depositions of medical experts, Mr. Pledger was unable to present this proof. The granting of summary judgment was premature because the facts in this case were not sufficiently developed for the circuit court to determine whether summary judgment was appropriate. We hold that the circuit court abused its discretion in granting summary judgment in favor of Dr. Carrick and the Cooper Clinic prior to allowing Mr. Pledger to complete the discovery that was crucial to his case.

Reversed and remanded.