2011 Ark. App. 116

**QUALITY PETROLEUM, INC., Appellant**

v.

**WINDWARD PETROLEUM, INC., Appellee.**

**No. CA 10–713.**

Court of Appeals of Arkansas.

Feb. 16, 2011.

Ronald Arthur Hope, Ralph Wilson, III, Little Rock, for appellant.

Leigh Anne Yeargan, Rogers, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Quality Petroleum, Inc., appeals the order of summary judgment entered by the Pulaski County Circuit Court, dismissing the complaint against appellee Windward Petroleum, Inc., for tortious interference with a business and contractual relationship and business expectancy. Quality contends that the trial court erred in granting summary judgment to Windward. We agree and reverse and remand.

On April 4, 2006, Quality entered into an agreement with Kwik Kar Lube and Automotive Repair Center, Inc., located in Fayetteville, Arkansas, for the sale of petroleum products. The parties agreed to a five-year contract wherein Kwik Kar agreed to purchase a total volume commitment of 106,572 units of petroleum at $0.37 per unit—a minimum of 5329 units per quarter. In addition, Quality agreed to pay Kwik Kar $1,394.03 in quarterly installments as an advance of working capital.[1] The contract also provided that in the event of Kwik Kar's default, Quality's contractual obligations terminated immediately, obligating Kwik Kar to refund Quality an amount based upon a stated formula.[2]

According to the affidavit of Tim Colclasure, the general manager of Quality,

---

1. The parties' contract provided that over the course of the five-year agreement, Quality would advance Kwik Kar working capital totaling $39,000.

2. Paragraph six of the contract stated:
   In the event [Kwik Kar] is in default of this Agreement, [Quality's] obligations hereunder shall terminate immediately. Further, upon default, [Kwik Kar] shall be obligated to refund to [Quality] an amount equal to the Total Volume Commitment less the cumulative number of Units of Product purchased during the term of the Agreement, the resulting number being multiplied by the addition of the Unit Credit and $0.10.... This amount will equate to full and final satisfaction of the obligation.

after June 30, 2008, Kwik Kar substantially failed to meet the minimum quarterly purchase requirements.[3] Quality then learned that Windward was delivering petroleum products to Kwik Kar and had contacted Kwik Kar about "paying off" the outstanding balance to terminate the contract between it and Quality. In response, Quality sent a demand letter to Windward on January 20, 2009, which stated:

> It is our understanding that you have approached Kwik Kar regarding termination of [the] agreement [between Quality and Kwik Kar]. Please be advised that [Quality] will view any action on your behalf to interfere with its contract as an intentional interference with its contractual relations and, in the event that such interference does not immediately cease, will take all necessary action to protect its legal rights, including the filing of a suit for any damages occasioned by the interference. Hopefully, this will not be necessary. Please consider this letter as a demand that you immediately cease any and all interference with the contractual rights of Quality [ ].

According to Quality, despite this notice of the contractual relationship between it and Kwik Kar, Windward sold, and continued to sell, its petroleum products to Kwik Kar. On April 20, 2009, Quality filed suit against Windward alleging tortious interference with its business and contractual relationship and business expectancy with Kwik Kar. Quality alleged that the interference by Windward induced or caused a breach or termination of the relationship between Quality and Kwik Kar, and that as a result of Windward's interference, Quality sustained damages in lost profits that it would have realized for the remaining years of the contract. Quality sought pecuniary damages, injunctive relief, and punitive damages from Windward.

In July 2009, Kwik Kar contacted Quality to terminate their sales contract. According to Colclasure, the "contract was terminated pursuant to a breach of contract by Kwik Kar." Pursuant to paragraph six of their contract, on July 23, 2009, Kwik Kar paid Quality a refund of $14,645.99. Kwik Kar's check, which was accepted by Quality, included the notation "pmnt release from contract dated 4/4/06."

Thereafter, Windward filed a motion for summary judgment. At the onset of the summary-judgment hearing, counsel for Windward limited its argument in support of summary judgment to one "discrete issue":

> WINDWARD COUNSEL: And the first thing I wanted to point out is that we've moved for summary judgment on a discrete issue. We've not tried to attack all of the elements that the plaintiff would have to prove on its claim because we believe this one issue that we've raised is dispositive. And I just wanted to make it clear that we do dispute a number of the other elements in their claim, including knowledge, whether there was intentional interference, and whether we acted improperly. I do not intend to address those. I don't think it's been raised by the papers.
>
> So getting to the issue. The issue of this accord and satisfaction really is dispositive of the contract element that they have to prove, that there was a contract. And they have to prove that they suffered damages.

---

**3.** From May 1, 2006 to March 19, 2009, Kwik Kar only purchased 42,784 units, leaving a deficiency of 63,788 units.

And the facts are undisputed on that point.

In response, Quality contended that Windward's argument—that Quality's accord and satisfaction of Kwik Kar's contractual obligations extinguished Quality's tortious—interference claim against Windward—was not supported by legal citation. Quality further argued that it presented sufficient facts that Kwik Kar breached their contract and that Quality sustained damages beyond the refund it received from Kwik Kar.

During Quality's argument, the following colloquy with the trial court occurred:

THE COURT: You don't dispute that you have settled the entire contract with Kwik Kar?

QUALITY COUNSEL: Well, we didn't so much settle the entire contract. The other part wasn't at issue.

THE COURT: Let me ask you this.

QUALITY COUNSEL: We don't have any further cause of action against Kwik Kar.

THE COURT: Right. Nor can you, based on settlement?

QUALITY COUNSEL: But that other part of the contract wasn't even part of the discussion. The only discussion was the working capital, how much you got advanced and how much you have to pay back.

THE COURT: And as part of the refund, you agreed not to pursue them on the other part of the contract?

QUALITY COUNSEL: I don't believe that was the case. I mean, that other part wasn't part of it. We just got our refund, and that was it.

THE COURT: I had understood that y'all settled with Kwik Kar on the contract. And maybe you're claiming that no, all we did was receive a refund. But the check that I saw indicated that it was in full satisfaction of the contract dated X number.

QUALITY COUNSEL: We're not going after them for any other part. We never were. That wasn't ever at issue.

THE COURT: I guess that's my point, that as between you and Kwik Kar, y'all have settled.

QUALITY COUNSEL: We're done.

THE COURT: Right. And so—

QUALITY COUNSEL: But the only issue with us was the repayment of the working capital, and that's the issue we resolved.

THE COURT: Well, that may have been why you settled. But are you contesting that there was a full and final settlement of the contract between you and Kwik Kar?

QUALITY COUNSEL: Well, in the vein that it included all these other things, because they weren't included, we settled—what they owed us under the contract was the refund of the working capital. And we've resolved that and they paid it.

At the conclusion of the hearing, the trial court found:

Well, taking paragraph [six of the contract], and in light of Mr. Colclasure's affidavit, I believe that Kwik Kar satisfied all of the obligations they had under the contract. So I am going to grant the motion for summary judgment ... and maybe we'll get some Arkansas law on [this issue]."

The order granting summary judgment was entered April 28, 2010, and this appeal followed.

The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Pledger v. Car-*

*rick,* 362 Ark. 182, 187–88, 208 S.W.3d 100, 102 (2005). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Pledger,* 362 Ark. at 187, 208 S.W.3d at 102. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* at 187, 208 S.W.3d at 102. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.,* 208 S.W.3d at 102. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.,* 208 S.W.3d at 102.

As argued to the trial court, Windward on appeal argues only one point: whether Quality's acceptance of the refund from Kwik Kar was an accord and satisfaction that discharged Kwik Kar's obligations under the contract and extinguished Quality's tortious-interference claim because Quality cannot prove the required elements of breach of contract or damages.

▆ Arkansas has recognized wrongful interference with a contract as an actionable tort for over a century. *West Memphis Adolescent Residential, LLC v. Compton,* 2010 Ark. App. 450, at 9, 374 S.W.3d 922, 927. The elements of a claim of tortious interference are (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Vowell v. Fairfield Bay Cmty. Club, Inc.,* 346 Ark. 270, 276, 58 S.W.3d 324, 329 (2001). An additional requirement is that the interfering party's conduct be at least "improper." *Vowell,* 346 Ark. at 277, 58 S.W.3d at 329.

▆ "Accord and satisfaction" is defined as a settlement in which one party agrees to pay and the other to receive a different consideration or a sum less than the amount to which the latter considers himself entitled. *Glover v. Woodhaven Homes, Inc.,* 346 Ark. 397, 403, 57 S.W.3d 211, 216 (2001). The essential elements to prove accord and satisfaction are (1) proper subject matter; (2) competent parties; (3) an assent or meeting of the minds; (4) consideration. *Glover,* 346 Ark. at 403–04, 57 S.W.3d at 216. The key element is a meeting of the minds, such that there must be an objective indicator that the parties agreed that the payment tendered will discharge the debt. *Id.* at 404, 57 S.W.3d at 216.

▆ The undisputed facts in this case establish that there was an accord and satisfaction of the contractual dispute between Quality and Kwik Kar. In settlement of their contract dispute, Kwik Kar agreed to pay and Quality agreed to accept a sum less than it considered itself entitled. There are no facts to the contrary in the record, and as set forth above, counsel for Quality conceded this at the hearing. Therefore, the question that remains is whether the accord and satisfaction between Quality and Kwik Kar extinguished Quality's tortious-interference claim against Windward.

▆ Notably, Windward does not cite authority for the argument that accord and satisfaction of the underlying contract extinguishes an independent claim for tortious interference. In fact, Windward candidly states in its brief that "neither party has identified a case considering an

accord and satisfaction in the context of a tortious[-]interference claim." Indeed, there appears to be no Arkansas case directly on point. However, the Restatement (Second) of Torts provides that settlement with a breaching party does not foreclose a separate action for tortious interference against the party inducing the breach. The commentary to section 766 of the Restatement (Second) of Torts, entitled "Intentional Interference With Performance Of Contract By Third Person," provides:

> The fact that the plaintiff has an available action for breach of contract against the third person [who breached the contract] does not prevent him from maintaining an action under the rule stated in this Section against the person who has induced or otherwise caused the breach. The two are both wrongdoers, and each is liable to the plaintiff for the harm caused to him by the loss of the benefits of the contract.... Even a judgment obtained against the third person for the breach of contract will not bar the action under this Section so long as the judgment is not satisfied. Payments made by the third person [who breached the contract] in settlement of the claim against him must, however, be credited against the liability for causing the breach and so go to reduce the damages for the tort.

Restatement (Second) of Torts § 766 cmt. v (1979). This comment illustrates that a settlement with the contracting party does not extinguish a tortious-interference claim against the party who intentionally caused the breach.

Furthermore, Quality presented sufficient evidence to create a fact question on whether Kwik Kar breached its contract with Quality and whether Quality suffered damages beyond the amount of the refund from Kwik Kar. On the issue of breach,

Quality's proof was that Kwik Kar failed to meet minimum quarterly installments as of June 30, 2008, and this allegation is not contested in the summary-judgment record. The undisputed facts also establish that the alleged breach occurred well before Quality accepted the refund check from Kwik Kar in July 2009. Also, both of the parties agreed that the refund was paid pursuant to paragraph six of their contract, which served as a termination-of-contract provision—specifically outlining the parties' obligations in case of Kwik Kar's default.

Windward's reliance upon *El Paso Prod. Co. v. Blanchard,* 371 Ark. 634, 269 S.W.3d 362 (2007), is misplaced. While the causes of action in *Blanchard* included (among others) claims for breach of contract and tortious interference, that case was not a summary-judgment case. There, the supreme court reversed the trial court's finding of a breach of contract between Blanchard and Swift (the contracting parties) and, based on that holding, concluded that without a breach of contract there could be no suit for tortious interference by Blanchard against El Paso Products. *Blanchard,* 371 Ark. at 648, 269 S.W.3d at 373–74. The case at bar is distinguishable because it is at the summary-judgment phase, and as discussed there is a factual dispute as to whether Kwik Kar breached its contract with Quality.

On the issue of damages, Quality's proof was that the refund it received from Kwik Kar was merely a reimbursement of its working-capital advance and did not include the profits Quality expected to receive from the future sale of petroleum products to Kwik Kar. According to Quality, both the breach and the damages that flowed from the breach were caused by Windward's intentional interference.

■ Also, Quality's claim for damages against Windward is not limited to con-

tractual losses. Quality's complaint also seeks injunctive relief and punitive damages. On a tort claim such as intentional interference with contractual relations, a plaintiff may recover damages over and above what the breached contract contemplated. *Waste Mgmt. of Ark., Inc. v. Roll Off Serv., Inc.*, 88 Ark. App. 343, 356, 199 S.W.3d 91, 99 (2004) (citing Restatement (Second) of Torts § 774A, $|_{10}$cmt. d (1979)).[4]

As set forth above, we hold that the trial court erred in finding that, as a matter of law, the accord and satisfaction between Quality and Kwik Kar extinguished Quality's tortious-interference claim against Windward. We further hold that there are genuine issues of material fact relating to two of the required elements of Quality's tortious-interference claim against Windward—whether Kwik Kar breached its agreement with Quality and whether Quality sustained damages in excess of the amount refunded by Kwik Kar. Accordingly, we reverse the trial court's order of summary judgment and remand for proceedings consistent with this opinion.

Reversed and remanded.

GRUBER and ABRAMSON, JJ., agree.

---

4. Section 774A of the Restatement provides:

(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for (a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; and

(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.
Restatement (Second) of Torts § 774A (1979). The comments to this section further provide that in certain cases, recovery for punitive damages and injunctive relief may be appropriate. Restatement (Second) of Torts § 774A cmt. a, f.