Angelia HACKELTON, Administrator of the Estate of Lois Ray, Deceased *v.* Mark J. MALLOY, M.D., Mark J. Malloy, M.D., P.A., Dennis Yelvington, M.D., et al.

04-358                                      221 S.W.3d 353

Supreme Court of Arkansas
Opinion delivered January 5, 2006

*Cullen & Co., PLLC*, by: *Tim Cullen*; and *Boyd Law Firm*, by: *Charles Phillip Boyd*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Ken Cook* and *Jeffrey L. Singleton*, for appellee Dennis Yelvington; and *Friday, Eldredge & Clark*, by: *Don Bacon*, for appellee Mark J. Malloy, M.D.

ROBERT L. BROWN, Justice. Appellant Angelia Hackelton appeals from the order granting summary judgment to appellees Mark J. Malloy, M.D. and Mark J. Malloy, M.D., P.A.,

(hereinafter "Dr. Malloy") and the order dismissing appellee Dr. Dennis Yelvington from the litigation. She raises two points on appeal: (1) there was no basis in law for the dismissal of Dr. Malloy from the action; and (2) the trial court erred by dismissing her complaint against Dr. Yelvington for failure to perfect service, because Ms. Hackelton properly filed a motion to extend time to serve Dr. Yelvington within 120 days of adding him as a defendant. We affirm in part and reverse in part and remand.

The facts are alleged in Ms. Hackelton's complaint. On October 25, 1995, Lois Ray was admitted at the emergency room of the Stuttgart Regional Medical Center ("SRMC"), where she was diagnosed with congestive heart failure by Dr. Malloy. On October 27, 1995, Mrs. Ray was released. On October 28, 1995, Mrs. Ray returned to the SRMC emergency room complaining of severe abdominal pain. She was seen by Dr. Malloy, who released her. On October 29, 1995, Mrs. Ray returned for a third time to the emergency room, and she was again admitted. Dr. Malloy continued to treat Mrs. Ray for "congestive heart failure" at SRMC from October 29, 1995, up to and through November 14, 1995, when Mrs. Ray was transferred to the care of Dr. Yelvington. Mrs. Ray died on November 22, 1995, from an infracted and perforated bowel, a condition which Ms. Hackelton asserts Dr. Malloy and Dr. Yelvington failed to identify, diagnose, and treat.

On October 1, 1997, Ms. Hackelton petitioned to be appointed administrator of the Estate of Lois Ray, her deceased mother. On October 2, 1997, she filed a complaint against Dr. Malloy, Stuttgart Regional Medical Center, and John Does 1-25 for medical malpractice and wrongful death.[1] On October 8, 1997, the probate court entered an order appointing Ms. Hackelton administrator. On October 15, 1997, Ms. Hackelton amended her original complaint to name Jack Wagoner, M.D., and Dr. Yelvington as defendants.[2] In her amended complaint, she incorporated by reference her original complaint filed on October 2, 1997, under Arkansas Rule of Civil Procedure 10. Ms. Hackelton also cited to Arkansas Rule of Civil Procedure 15 in her amended complaint and stated that she was amending her complaint in

---

[1] In her complaint, Ms. Hackelton described the "John Does 1-25" as "representing all persons responsible for providing medical/nursing/health care and treatment to the deceased, or the liability insurance carrier for any defendant immune to direct action."

[2] At various times, Jack Wagoner is referred to as Jack Warner in the pleadings.

accordance with that rule to bring the action against Dr. Wagoner and Dr. Yelvington. On October 20, 1997, Ms. Hackelton filed an addendum to her amended complaint in which she noted that she was changing the style of the case to reflect that Dr. Wagoner and Dr. Yelvington had been added to her complaint as defendants.

On February 23, 1998, the trial court entered an order granting Ms. Hackelton's motion for extension of time to serve Dr. Wagoner and Dr. Yelvington and extended the time for service and identification to June 19, 1998.[3] Ms. Hackelton obtained service on Dr. Yelvington on May 6, 1998. On August 17, 1998, Dr. Yelvington moved to vacate the prior order of the trial court that granted Ms. Hackelton the extension of time to serve him. Dr. Yelvington's motion also requested that the court dismiss him from the action with prejudice. The trial court denied Dr. Yelvington's motion and ruled that the request for extension of time was made in accordance with Arkansas Rule of Civil Procedure 4(i).

On January 10, 2003, Dr. Yelvington moved to clarify the trial court's previous denial of his motion to vacate in which he alleged that Ms. Hackelton's motion to extend time was filed late in violation of Rule 4(i). On October 30, 2003, the court entered an order granting Dr. Yelvington's motion for clarification and dismissed Dr. Yelvington from the action with prejudice.

On January 27, 2003, prior to his dismissal from the lawsuit, Dr. Yelvington filed a second motion for summary judgment in which he alleged that Ms. Hackelton did not have standing to bring this action and that her original complaint was a nullity. Before the court ruled on this motion, Dr. Yelvington was dismissed on the basis of lack of timely service. On December 18, 2003, the court entered an order dismissing Dr. Malloy from the action for the same reasons stated in Dr. Yelvington's standing-to-sue motion, which was Dr. Yelvington's second motion for summary judgment.[4] On February 2, 2004, on motion by Ms. Hackelton, the court entered an order granting a nonsuit and

---

[3] In her brief, Hackelton states that the time was extended to June 18, 1998. Her motion for extension of time, which the court granted, requests, however, that the time be extended to June 19, 1998.

[4] From a review of the record, it appears that the trial court entered judgment in favor of Dr. Malloy based on the argument in Dr. Yelvington's second motion for summary judgment. Dr. Malloy apparently did not file a motion incorporating the arguments made in

dismissing without prejudice all parties not previously dismissed, in accordance with Rule 41 of the Arkansas Rules of Civil Procedure.

## I. Dr. Malloy's Dismissal

Ms. Hackelton first contends that she was the real party in interest under Arkansas Rule of Civil Procedure 17(a) because she was appointed the administrator of her mother's estate. She asserts that even assuming *arguendo* that she was a nonexistent plaintiff at the time she filed her original complaint and not yet the real party in interest, she did file an amended complaint thirteen days later in her formal capacity as administrator. She further claims that after she was appointed administrator, she was the only person who had standing to file the wrongful-death suit, and that she did so.

In addition, she urges that Dr. Malloy waived his objection to her standing as the real party in interest by waiting five years and three months after the filing of the original and amended complaints to raise this issue. Because Dr. Malloy's defense to Ms. Hackelton's wrongful-death claim *before* she was appointed administrator is the same defense made to Ms. Hackelton's claim *after* her formal appointment as administrator, she asserts that there was clearly no prejudice to Dr. Malloy.

As a third point, Ms. Hackelton argues that our prior case law regarding standing is inapplicable to this case, and the trial court's reliance on those cases was error. She contends that is because in those cases the statute of limitations had run prior to the entry of the amended pleadings, while in her case at the time she filed her amended complaint and her addendum to the complaint, the statute of limitations had not run. Moreover, she claims that her amended complaint constituted a new action, which was timely filed within the time frame of the statute of limitations. Therefore, the trial court's decision to dismiss her action because the amended complaint could not "relate back" to the original complaint was erroneous and should be reversed.

Dr. Malloy responds that summary judgment and his dismissal were proper because Ms. Hackelton was not the real party in interest under Rule 17(a) when she filed the original complaint pursuant to Ark. Code Ann. §§ 16-62-101 and 102 (1987). He

---

Dr. Yelvington's second motion for summary judgment, but he previously asked for dismissal in his answer to Ms. Hackelton's original complaint.

adds that because Ms. Hackelton was not the real party in interest, she lacked standing to sue, and her original complaint was a nullity. He points out that in *Davenport v. Lee,* 348 Ark. 148, 72 S.W.3d 85 (2002), this court held that a nonexistent complaint cannot be corrected or salvaged.

Dr. Malloy further contends that he never waived his objection to Ms. Hackelton's standing to sue. He emphasizes that Dr. Yelvington raised the objection to Ms. Hackelton's standing before trial. He further claims that Rule 17(a) cannot preserve Ms. Hackelton's complaint, when her complaint never existed. In this connection, he states that it is illogical to assert that he waived his defense to a void claim.

We first consider the judgment in this case entered by the trial court. Though a motion for summary judgment is referred to in the judgment, the complaint against Dr. Malloy was dismissed due to the expiration of the statute of limitations. Accordingly, we view this matter as an appeal from a grant of a motion to dismiss. Our standard of review in such appeals has recently been stated:

> When reviewing a circuit court's order granting a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *See Preston v. University of Arkansas for Medical Sciences,* 354 Ark. 666, 128 S.W.3d 430 (2003). In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *See id.* Further, if there is any reasonable doubt as to the application of the statute of limitations, this court will resolve the question in favor of the complaint standing and against the challenge. *State v. Diamond Lakes Oil Co.,* 347 Ark. 618, 66 S.W.3d 613 (2002).

*Brewer v. Poole,* 362 Ark. 1, 7, 207 S.W.3d 458, 461 (2005).

Rule 17(a) of the Arkansas Rules of Civil Procedure reads, in pertinent part, that "[e]very action shall be prosecuted in the name of the real party in interest." To determine who is properly classified as the real party in interest in a wrongful-death claim, we look to the applicable statute:

> Every action shall be brought by and in the name of the personal representative of the deceased person. If there is no personal representative, then the action shall be brought by the heirs at law of the deceased person.

Ark. Code Ann. § 16-62-102(b) (1987).

In *St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County, W. Div.*, 348 Ark. 197, 73 S.W.3d 584 (2002), all but one of the deceased's heirs-at-law filed a *pro se* complaint prior to the expiration of the statute of limitations and claimed medical malpractice. Later, the appointed administrators, who consisted of some of the plaintiffs who had filed the original complaint, filed an amended complaint after the statute-of-limitations period had expired. This court held that the *pro se* plaintiffs had no standing to sue when they filed the original complaint. Even though the plaintiffs who filed the original complaint and those who filed the amended complaint were substantially the same persons, they were not the same parties and, thus, were not acting in the same capacities. We noted that while they did not have standing to sue when they filed the original *pro se* complaint, they did have standing when they filed the amended complaint as appointed administrators. But we added, "[u]nfortunately, the statute of limitations had expired in the meantime." *Id.* at 205, 73 S.W.3d at 589.

We went on to say in *St. Paul Mercury Ins. Co.* that "[a]n action for wrongful death brought by a plaintiff in his capacity as an administrator pursuant to Ark. Code Ann. § 16-62-102 involves neither the same action, nor the same plaintiff as in a survival action brought by the same person in his individual capacity pursuant to Ark. Code Ann. § 16-62-101." *Id.* We held that because the amended complaint in that case operated to substitute out "all the plaintiffs, and put in their place entirely new plaintiffs, it was not an amendment, but rather was a new suit." *Id.* at 206, 73 S.W.3d at 589; *see also Rhuland v. Fahr*, 356 Ark. 382, 155 S.W.3d 2 (2004), *Ark-Homa Foods, Inc. v. Ward*, 251 Ark. 662, 664, 473 S.W.2d 910, 911 (1971) (noting that "[i]t is well settled that where an action is brought in the name of a non-existing plaintiff, an amendment of complaint by substituting the proper party to the action as plaintiff will be regarded as the institution of a new action as regards the statute of limitations").

█ █ In the case at hand, it is clear that under § 16-62-102(b), Ms. Hackelton did not have standing to sue when she filed the original complaint on October 2, 1997, because she had not yet been appointed the administrator of Mrs. Ray's estate and was not the sole heir. She was, however, appointed the administrator of the estate six days later. As a consequence, she was deemed to be a new party when she filed the amended complaint seven days later

on October 15, 1997. As this court explained in *St. Paul Mercury Ins. Co.*, "individual heirs at law are entirely distinct legal persons from . . . appointed administrators, and thus different parties." 348 Ark. at 205, 73 S.W.3d at 589. Based on this court's reasoning in *St. Paul Mercury Ins. Co.*, the filing of an amended complaint by a new party constituted the commencement of a new suit. Because the new suit was initiated prior to the expiration of the statute of limitations period, there was no need for the suit to "relate back" to the original complaint filed on October 2, 1997, under Arkansas Rule of Civil Procedure 15(c).

The only question that then remains is whether Ms. Hackelton's amended complaint can incorporate by reference the contents of her initial complaint, which she did not have standing to bring. We recently addressed a related question in *Brewer v. Poole, supra.* In *Brewer*, this court held that where the plaintiff who filed the wrongful death suit did not comply with § 16-62-102(b) due to the lack of all the heirs-at-law as parties to the lawsuit, the original complaint was a nullity. *See id.* This court then said: "[w]here the original complaint is a nullity, Rules 15 and 17 [of the Arkansas Rules of Civil Procedure] are inapplicable because the original complaint never existed; thus, there is no pleading to amend and nothing to relate back." *Id.* at 14, 207 S.W.3d at 466.

Applying *Brewer* to the instant case, we conclude that the original complaint filed by Hackelton was a nullity because Hackelton did not have standing to file the complaint as she was not the appointed administrator nor was she the sole heir at law at that time. Having said that, in the case before us, unlike *Brewer*, we have a new lawsuit commenced by a proper party plaintiff within the time period of the statute of limitations which incorporates by reference the allegations made in the original complaint. Furthermore, Rule 10(c) of the Arkansas Rules of Civil Procedure expressly provides that statements in a pleading can be adopted by reference in another pleading. That is precisely what Ms. Hackelton did with her amended complaint. She incorporated statements from her original complaint into her amended complaint by reference and, thus, allowed them to function as allegations in a new suit. This is categorically different from an attempt to amend an original complaint with a new party plaintiff and have that amendment relate back to the original complaint under Rule 15(c) after the statute-of-limitations period has passed. Relation-back, of course, was the issue in *Brewer v. Poole, supra.*

In short, although for purposes of relation back under Rule 15, the original complaint is a nullity because Ms. Hackelton lacked standing to sue at the time she filed it, the original complaint remains a document setting out allegations satisfying the fact-pleading requirements for a complaint set out in Ark. R. Civ. P. 8(a)(1). The facts pled in the original complaint may be adopted by reference under Ark. R. Civ. P. 10(c) into the timely amended complaint. Rule 15 and relation back under that rule are simply not relevant to adoption by reference under Rule 10. We reverse the trial court's dismissal of Dr. Malloy and remand for further proceedings.

## II. Dismissal of Dr. Yelvington

We turn next to the dismissal of Dr. Yelvington. Ms. Hackelton asserts that Dr. Yelvington was properly made a party in this case on October 20, 1997, when she filed an addendum to her amended complaint that named Dr. Yelvington as a party defendant in the caption of the action. According to her assertions, under Arkansas Rule of Civil Procedure 10(a), "the title of the action shall include the names of all the parties." She reasons that this court's case law also supports her argument that in order for a person to be made a party to a lawsuit, his or her name must be included in the caption of the case. Because October 20, 1997, was the first time she included Dr. Yelvington as a party in the caption of the case, she claims that this is the date when he was formally made a party to the lawsuit. Hence, she contends that it is from this date that the 120-day period for service in Arkansas Rule of Civil Procedure 4(i) began to run. She further notes that Dr. Yelvington actually admitted this in his September 26, 2002, Motion for Partial Summary Judgment, where he alleged that "[b]y addendum to Amended Complaint, filed of record on October 20, 1997, Dr. Dennis Yelvington was added as a party defendant." Ms. Hackelton adds that it was not until January of 2003 that Dr. Yelvington changed his position and claimed he was made a party defendant on October 15, 1997.

Dr. Malloy responds that Ms. Hackelton is raising the "caption" argument under Rule 10(a) for the first time on appeal. We agree. After scouring the record in this case, we find no argument based on Rule 10(a) that was made to the trial court relative to Dr. Yelvington. Nor do we find where the "admission" argument about when Dr. Yelvington was added as a party defendant was made to the trial court. It is elementary that this

court will not consider arguments made by an appellant for the first time on appeal. *Rhuland v. Fahr*, 356 Ark. 382, 155 S.W.3d 2 (2004). We will not do so because it is incumbent on the parties to raise arguments initially to the trial court to give that court an opportunity to consider them. *Hubbard v. Univ. of Arkansas Med. Sciences*, 272 Ark. 500, 616 S.W.2d 10 (1981). Otherwise, this court would be placed in the position of reversing a trial court for reasons never presented to that court. *Blaylock v. Strecker*, 291 Ark. 340, 724 S.W.2d 470 (1987). We will not do this. Accordingly, we affirm the trial court in the dismissal of Dr. Yelvington from this action.

Affirmed in part. Reversed in part and remanded.

GLAZE and IMBER, JJ., concur.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur with the result reached in this case; however, I must write separately to address the majority's analysis. This case highlights a continuing concern I have had regarding cases involving the Arkansas survival and wrongful-death statutes, respectively codified at Ark. Code Ann. §§ 16-62-101 and 16-62-102 (Supp. 2001), and it demonstrates exactly why the majority's analysis is both untenable and contrary to Rules 15(c) and 17(a) of the Arkansas Rules of Civil Procedure.

The instant case concerns the issue of whether a party with standing to file a complaint in a wrongful-death suit can be substituted for the party that filed the original complaint. This issue was analyzed in a series of cases, the reasoning of which led to the majority opinion in the case at hand.

We first reviewed this issue in *St. Paul Mercury Insurance Company v. Circuit Court of Craig County, Western Division*, 348 Ark. 197, 73 S.W.3d 584 (2002). In *St. Paul*, a *pro se* complaint alleging medical malpractice was filed by the deceased's parents and his other heirs-at-law with the exception of his daughter, who had been appointed as the special administrator of his estate. On February 26, 2001, the limitations period on any malpractice action expired. On April 24, 2001, the deceased's parents were substituted for the daughter as special administrators, and on May 9, 2001, they filed an amended complaint as plaintiff special administrators. The second complaint was not filed within the two-year limitations period, and consequently could not be valid unless it "related back" to the original *pro se* complaint.

In the clear language of Ark. Code Ann. § 16-62-102(b) (Supp. 2001), "[e]very action shall be brought by and in the name of the personal representative of the deceased person," and "[i]f there is no personal representative, then the action shall be brought by the heirs at law of the deceased person." Therefore, the first complaint filed by the deceased's parents and other heirs-at-law without the deceased's daughter, who happened to also be the administrator of the deceased's estate, was not permitted under the statute. The conclusion of the majority opinion in *St. Paul* was that the *pro se* complaint was a nullity because it was filed by a party that did not have the standing to file suit. Accordingly, there was no complaint to amend in May 2001. The majority determined that Ark. R. Civ. P. 15 was not applicable because there was no pleading to amend when the parents filed their amended complaint as administrators.

The majority in *St. Paul* also reasoned that the parents as individual heirs-at-law are entirely distinct legal persons from the parents in their later capacity as appointed administrators, and thus different parties. The amended complaint substituted all the original plaintiffs with entirely new plaintiffs. Therefore, it was not an amendment, but rather a new suit. The majority further reasoned that because the *pro se* complaint was not permitted under the survival statute, there was no complaint to amend. Moreover, the amended complaint was tantamount to the filing of a new lawsuit, which was barred by the statute of limitations.

In my concurrence in *St. Paul*, I expressed concern that the majority understated the effect of Rules 15(c) and 17(a) of the Arkansas Rules of Civil Procedure with respect to permitting the substitution of a new plaintiff to relate back under circumstances not implicated in the case. I noted that the case cited by the majority, *Floyd Plant Food Co. v. Moore*, 197 Ark. 259, 122 S.W.2d 463 (1938), was a pre-rule case for the proposition that where the amended complaint substituted out all the plaintiffs and put in their place entirely new plaintiffs, the amendment constituted a new suit that could not relate back to the original. Arkansas abandoned the framework of "new cause of action" when it adopted its current rules of civil procedure with respect to the relation back of certain types of amendments. The new rule permits the addition of claims and defenses arising out of the same transaction, and it also permits the substitution of parties so long as the amendment is related to the same transaction, service is perfected and there is no prejudice to the other party.

The commentary to the 1966 amendments to Fed. R. Civ. P. 15(c), which have been adopted by this court, state that the rule applies by analogy to plaintiffs in order to effectuate the policy of liberalized requirements of pleading by noting that the amendment of Rule 17(a) is also relevant. The commentary indicates that Rule 15(c) may operate to permit amendments changing plaintiffs to "relate back" and illustrates that intent by pointing to related provisions in revised Rule 17(a).

The interaction between Rule 15(c) and Rule 17(a) in the context of new plaintiffs has been addressed by the federal appellate courts. In *Crowder v. Gordons Transports, Inc.*, 387 F.2d 413 (8th Cir. 1967), the appellate court stated that Rules 15(c) and 17(a) were designed for relation back "to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Id.* at 418 (citing 28 U.S.C.A. Rule 17, Cum. P.P. Notes p. 5). In *Scheufler v. General Host Corp.*, 126 F.3d 1261 (10th Cir. 1997), the appellate court noted that the failure to name the real party in interest was not "some tactic designed to prejudice defendants, but instead was the result of a mistake as to the legal effectiveness of the documents allegedly assigning the tenants' claims to their respective landlords." *Id.* at 1270. These cases demonstrated that federal courts have looked to Rule 17(a)'s express provision for the substitution of the real party in interest and analogized that Rule 15(c) permits this kind of amendment to "relate back." In my concurring opinion, I offered this detailed analysis of the interaction between Rule 15(c) and Rule 17(a) in an attempt to rein in the majority's dicta concerning the substitution of a new plaintiff to "relate back" generally. Although I agreed with the result of the majority in *St. Paul*, I departed from their reasoning to point out that the mistake in bringing the action initially in the name of less than all of the heirs was neither "understandable" nor "excusable," and it was for *this* reason that the amended complaint could not "relate back."

This court faced a similar issue in *Davenport v. Lee*, 348 Ark. 148, 72 S.W.3d 85 (2002). In *Davenport*, the administrator of the deceased's estate filed a *pro se* complaint for wrongful-death alleging negligence on the part of the doctors who cared for the deceased. The statute of limitations expired on February 11, 1999. On May 28, 1999, the administrator's attorney filed an entry of appearance, as well as a pleading entitled "Addendum to Complaint." The addendum that professed to change the case styling to

reflect the addition of another defendant was the first pleading signed by an attorney in the action.

The majority stated in *Davenport* that an administrator acts only as a "trustee of conduit," *Brewer v. Lacefield*, 301 Ark. 358, 784 S.W.2d 156 (1999), and that proceeds from a wrongful-death action are for the sole benefit of the statutory beneficiaries which are held in trust by the administrator "for the benefit of the widow and next of kin." *Douglas v. Holbert*, 335 Ark. 305, 314, 983 S.W.2d 392, 396 (1998); *see also Brewer v. Lacefield, supra*. As a result, the majority reasoned that the appellants, as the administrators of the deceased's estate, were acting on behalf of all the heirs-at-law when they filed this wrongful-death action. Since administrators or other fiduciaries cannot proceed *pro se* in their representative capacity, *Ark. Bar Ass'n v. Union Nat'l Bank*, 224 Ark. 48, 273 S.W.2d 408 (1954), the majority concluded that the appellants engaged in the unauthorized practice of law. The majority held that where a party not licensed to practice law in this state attempts to represent the interests of others by submitting himself or herself to jurisdiction of a court, those actions, such as the filing of pleadings, are rendered a nullity. Following this line of reasoning, Rules 15(c) and 17(a) did not apply, because the original complaint, as a nullity, never existed, and therefore an amended complaint could not relate back to something that never existed, nor could a nonexistent complaint be corrected.

I wrote a concurring opinion in *Davenport*, agreeing that the court's regulatory duty under Amendment 28 to the Arkansas Constitution mandates our holding set forth in the majority opinion regarding the practice of law without a license. The filing of a *pro se* complaint on behalf of statutory beneficiaries constituted the unauthorized practice of law, and thus rendered the complaint a nullity. However, I wrote separately in order to repeat the same concerns I had in *St. Paul*. I reminded the majority that the federal appellate courts have construed Rules 15(c) and 17(a) of the Federal Rules of Civil Procedure to permit the "relation back" of amendments to pleadings adding entirely new plaintiffs under circumstances that do not evince a tactical or strategic decision, but rather, an understandable and excusable mistake. The Arkansas survival and wrongful-death statutes, respectively codified at Ark. Code Ann. §§ 16-62-101 and 16-62-102 (Supp. 2001), provide very clear and precise language delineating the proper party to bring suit. In *Davenport*, the attorney's instruction to his clients to file *pro se* and his failure to sign the pleading could not be condoned

as an understandable mistake. The appellants' conduct in the *Davenport* case was in fact a deliberate and tactical choice.

The purpose of each of my concurrences in *St. Paul* and *Davenport* was to direct the court away from the complaint-as-a-nullity analysis. In my view, the result of a nullity is too extreme to be applied outside the limited scope of *Davenport*. Clearly, as I have pointed out in each concurring opinion, the federal courts have made detailed examinations regarding the application of Rules 15(c) and 17(a) and the interplay of these rules so as to allow for the substitution of plaintiffs if the mistake in bringing the action initially in the name of less than all of the heirs was understandable or excusable. The problem with the majority's analysis in *St. Paul* and *Davenport* existed in the use of the "nullity" language when a complaint was drafted and filed by a party not permitted under the applicable survival and wrongful-death statutes. If any complaint asserting a statutory claim but filed by an inappropriate party constitutes a nullity, and consequently an amended complaint cannot relate back to the date of the filing of the original complaint, then the applicability of and interplay between Rules 15(c) and 17(a) has been effectively eviscerated.

This is exactly the direction the majority went in *Brewer v. Poole*, 362 Ark. 1, 207 S.W.3d 458 (2005). In *Brewer*, the deceased's husband, children, and parents filed suit alleging wrongful death due to medical malpractice in December 1997. On March 25, 2002, the plaintiffs filed a third amended complaint, adding the deceased's sisters. The court determined that the sisters were necessary parties to the action and that the original complaint in the case failed to include all the heirs-at-law as parties to the suit. The majority therefore reasoned that the original complaint was a nullity. Thus, Rules 15(c) and 17(a) were not applicable because the original complaint never existed. Due to the nullity, there was no pleading to amend and nothing to "relate back."

In my concurrence to *Brewer*, I departed from the majority to write that

> the interaction between Rule 15(c), which allows an amended pleading to relate back 'if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading,' and Rule 17(a), which states that the substitution of a real party in interest 'shall have the same effect as if the action had been commenced in the name of the real party in interest,' allows an

amended complaint that substitutes new plaintiffs to relate back to the date of the original complaint when there has been an understandable mistake. Instead, the majority's reasoning in this case, that the original complaint filed by less than all the statutory beneficiaries is a nullity and thus the amended complaint cannot 'relate back' to the date of filing of the original complaint, effectively eviscerates the applicability of Rule 15(c) in *any* case arising out of a statutory claim. In my view, a better analysis is that the plaintiffs could not amend to add new plaintiffs because, in this case, where we have consistently interpreted the statute to require the joinder of all the statutory beneficiaries, the failure to include the sisters was not an understandable mistake.

*Brewer v. Poole, supra* (citations omitted). The majority opinion was a broader application of the nullity concept than what was at issue in *Davenport*, where this court held that a wrongful-death claim filed *pro se* constituted the unauthorized practice of law, and thus the complaint was a nullity. Although I agreed with the limited *Davenport* application, I could not agree that *any* case where a statutory claim is filed by an inappropriate party constitutes a nullity. As already expressed, my concern was in preserving the viability of Rules 15(c) and 17(a). When the majority suggested that any case where a statutory claim is filed by an inappropriate party constitutes a nullity, the purpose behind the interplay of Rules 15 and 17 was effectively gutted. Moreover, by adopting the "nullity" analysis and eviscerating the applicability of Rules 15(c) and 17(a), the majority has created the logical quandary at issue here.

Unlike *St. Paul, Davenport,* and *Brewer,* there is no statute-of-limitations issue in the instant case. The majority rightly points out that Ms. Hackleton did not have standing to sue when she filed the original complaint and that when she was appointed as the administrator of Mrs. Ray's estate she became a new party when she filed the amended complaint. Because there is no statute-of-limitations issue to be resolved, there is no need to "relate back" to the original complaint. Thus, the issue is whether Ms. Hackleton can incorporate by reference the contents of her initial complaint under Rule 10(c) of the Arkansas Rules of Civil Procedure, even though, according to *Brewer,* the original complaint was a nullity.

The majority concludes that Ms. Hackleton is able to incorporate by reference the allegations made in the original complaint. The majority writes, "[t]his is categorically different from an attempt to amend an original complaint with a new party

plaintiff and have that amendment relate back to the original complaint under Rule 15(c) after the statute of limitations period has passed." Yet, the majority opinion does not explain how a nullity, which by definition never existed, could exist for incorporation by reference. According to the American Heritage Dictionary, to "incorporate" is to unite one thing with something else already in existence. The only reason put forth by the majority to explain how a nullity can be incorporated by reference is that it can be done as long as the statute of limitations has not expired. Yet, no explanation is given as to why or how the statute of limitations affects the existence of the original complaint.

The majority's flawed analysis is revealed by its attempt to transform the meaning of "incorporation" and "nullity" in order to accomplish the desired result. The point I wish to make is simple. It is impossible to incorporate something from nothing; that is, if the first complaint was a nullity, then in the eyes of the law it never existed. Its contents amount to nothing. The majority essentially wants to incorporate *nothing* into the amended complaint. In order to get something from nothing and to somehow make this logical fallacy work, the majority has determined that the amended complaint is simply a new complaint, following the analysis of *St. Paul* and the pre-rule *Floyd Plant Food Co. v. Moore*, 197 Ark. 259, 122 S.W.2d 463 (1938). Yet, as was central to my concurring opinion in *St. Paul*, Rule 15 allows for the addition of claims and defenses arising out of the same transaction, and it also permits the substitution of parties so long as the amendment is related to the same transaction, service is perfected and there is no prejudice to the other party. Putting that matter aside, the existence of the new complaint is dependent on incorporating by reference the contents of the initial complaint. However, according to our precedent, the original complaint as a nullity never existed. Thus, if an amended complaint cannot "relate back" to something that never existed, and a nonexistent complaint cannot be corrected, the question of how something that never existed can be incorporated into a new complaint has yet to be answered. Again, no reason is proffered by the majority to explain how this is possible.

The majority must fit the law into a box created by the "nullity" analysis that eventually resulted in the *Brewer* holding. In order to preserve that holding and at the same time allow for the "incorporation" of something from nothing, the meaning and significance of a nullity has been changed. In essence, the extreme

result caused by the "nullity" analysis when a statutory claim is filed by an inappropriate party can only be avoided by a re-definition of firm legal terms.

If the applicability of Rule 17(a) had not been eviscerated in favor of the "nullity" analysis, the resolution of this case would have been simple. Under the plain language of Rule 17(a), the amended complaint incorporated the original complaint and sub-stituted the real party in interest, Ms. Hackleton as Administrator of the Estate, such that the "substitution [had] the same effect as if the action had been commenced in the name of the real party in interest." Ark. R. Civ. P. 17(a) (2005).

GLAZE, J., joins this concurrence.