2010 Ark. App. 807

**Kristie MENDEZ, in her capacity as Administratrix of the Estate of Cheryle K. Morse, Deceased, Appellant**

v.

**David B. GLOVER, M.D.; Rebecca R. Floyd, M.D.; Hriar P. Simonian, M.D.; Sparks Regional Medical Center; and John Does 1–10, Appellees.**

No. CA 10–416.

Court of Appeals of Arkansas.

Dec. 8, 2010.

William B. Putman, Taylor Law Partners, LLP, Fayetteville, for appellant.

T. Michelle Ator, Bradley S. Runyon, Friday, Eldredge & Clark, LLP, Little Rock, Walter Barry Cox, James R. Estes, Fayetteville, Brian D. Malkmus, Debra L. Gullett, Springfield, MO, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Kristie Mendez, in her capacity as the Administratrix of the Estate of Cheryle K. Morse, deceased, appeals two orders of summary judgment entered by the Circuit Court of Sebastian County, dismissing the medical-malpractice complaint filed against appellees Dr. David Glover, Dr. Rebecca Floyd, and Dr. Hriar

Simonian.[1] Mendez contends that the trial court erred in granting summary judgment to the three doctors. We affirm.

In June 2007, Morse was experiencing pelvic pain. She was referred by her family physician Dr. Floyd, to obstetrician/gynecologist Dr. Glover. Morse's initial appointment |₂with Dr. Glover was June 7, 2007, and he subsequently performed a laparoscopic-assisted vaginal hysterectomy on June 28, 2007. Morse experienced postsurgery complications, and Dr. Glover performed a second surgery four hours later. After these surgeries, Morse continued to experience complications.

Ten days later, Morse was examined by Dr. Simonian, who performed a sigmoidoscopy[2] on Morse on July 16, 2007. In his postoperative report, Dr. Simonian noted a "bifurcation in Morse's colon." On July 30, 2007, Morse was released from the hospital. A week later, Morse called Dr. Glover complaining of bloody stools and fever. Dr. Glover communicated this information to Dr. Floyd, and Morse was referred back to Dr. Simonian. In the following weeks, Morse's health continued to deteriorate. She was readmitted into the hospital, where she had another surgery for a perforated bowel and abscess. As a result of the bowel perforation, Morse developed sepsis, which resulted in her death on November 3, 2007.

Morse died intestate. Her heirs at law were Mendez (Morse's daughter), Eugene Morse (Morse's surviving spouse), and Morse's four surviving siblings, Jean Williams, Barbara Snead, Don Jones, and Neil Jones. As of April 20, 2009, Morse's estate had not been opened; thus, no personal representative had been appointed to it. However, on that date, Mendez and Eugene, in their individual capacities, filed a medical-malpractice, wrongful-death action |₃against Drs. Floyd, Glover, and Simonian, along with Sparks Hospital and John Does 1–10. In the complaint, it was alleged that the defendants' negligence resulted in Morse's death.

On July 17, 2009, an order was entered in the probate division of the circuit court, opening Morse's estate and appointing Mendez as the administratrix of Morse's estate. On November 3, 2009, an order was entered in the instant case, substituting Mendez in her capacity as the administratrix of Morse's estate as the proper plaintiff in the wrongful-death action.[3] In response, Drs. Glover and Simonian moved for summary judgment. They argued that the initial complaint filed was null and void because it was not filed by the proper parties and that the statute of limitations had since expired as to any claims which could have been asserted against them. Dr. Floyd later filed a summary-judgment motion adopting the same arguments raised by Drs. Glover and Simonian.

After a summary-judgment hearing, the trial court, on February 18, 2010, entered an order granting the motions in favor of Drs. Glover and Simonian. In that order,

---

1. One of these summary-judgment orders also dismissed appellee Sparks Regional Medical Center from Mendez's suit based on the doctrine of charitable immunity; however, Mendez does not challenge that ruling on appeal.

2. A sigmoidoscopy is the visual examination of the inside of the rectum and sigmoid colon using a lighted, flexible tube connected to an eyepiece or video screen for viewing.

3. The order substituting plaintiff provided:

On this [3rd] day of November, 2009, Plaintiff's Motion to Substitute Party came before the Court for consideration. The Court has determined that the Motion should be, and hereby is, granted. Kristie Mendez, Administratrix of the Estate of Cheryle Kay Morse, Deceased, is hereby substituted as Plaintiff in the above-styled cause of action.

IT IS SO ORDERED.

the trial court found that (1) Mendez's original wrongful-death complaint was a nullity because it failed to name all heirs at law as required by statute; (2) Mendez's subsequent filing of an order substituting her in her capacity as the administratrix of her mother's estate as the proper party plaintiff could not amend the null and void complaint; and (3) the order substituting Mendez as the proper plaintiff did not plead a new cause of action. The court further found that if the order substituting Mendez pled a new action (1) summary judgment was warranted because the new action was filed after the statute of limitations had expired; (2) Mendez failed to meet proof with proof regarding her allegation that the continuing-course-of-treatment doctrine extended the limitations period; and (3) due to Mendez's lack of diligence in conducting discovery, there was no merit to her argument that further discovery was needed to determine if there was proof to support her continuing-course-of-treatment argument. On April 6, 2010, the trial court entered another order granting Dr. Floyd's motion for summary judgment for the same reasons. Mendez timely appealed from these orders.

Mendez's first point on appeal is that the trial court erred in ruling that the order of substitution, filed on November 3, 2009, was ineffective and that her cause was barred by the statute of limitations. Within this point, she makes two arguments. First, she argues that because the order of substitution was filed within the two-year statute of limitations, it timely and effectively amended the original complaint. Second, she argues that the continuing-course-of-treatment doctrine extended the statute of limitations to November 3, 2009. Mendez's second point on appeal is that the trial court erred in granting summary judgment without allowing her an adequate opportunity to conduct discovery.

The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Pledger v. Carrick*, 362 Ark. 182, 187–88, 208 S.W.3d 100, 102 (2005). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Pledger*, 362 Ark. at 187, 208 S.W.3d at 102. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* at 187, 208 S.W.3d at 102. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*, 208 S.W.3d at 102. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*, 208 S.W.3d at 102.

When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading it. *Id.*, 208 S.W.3d at 102. However, once it is clear from the face of the complaint that the action is barred by the applicable statute of limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Id.* at 187–88, 208 S.W.3d at 102.

The Arkansas wrongful-death statute provides that a wrongful-death action may only be brought by and in the name of the personal representative of the deceased person or, if there is no personal

representative, then the action shall be brought by the heirs at law of the deceased person. Ark.Code Ann. § 16–62–102(b) (Repl.2005). Arkansas law is clear that where there is no personal representative at the time of filing, "all statutory beneficiaries must be joined as plaintiffs to the action." *Brewer v. Poole*, 362 Ark. 1, 11, 207 S.W.3d 458, 464 (2005). *See also Davenport v. Lee*, 348 Ark. 148, 160, 72 S.W.3d 85, 91 (2002) (stating that "[w]here no personal representative has been appointed, a wrongful-death suit must be filed with all of the statutory beneficiaries joined as parties to a suit"). "[W]hen the action is brought by the heirs there must be but a single action, and all the heirs must be made parties to it, so that the entire controversy may be determined and the entire amount recovered and distributed in the single action given by the statute." *Brewer*, 362 Ark. at 11, 207 S.W.3d at 464 (citing *St. Louis, I.M. & S. Ry. Co. v. Needham*, 52 F. 371, 375 (8th Cir.1892)).

■ Individual beneficiaries do not have standing to file a wrongful-death complaint. *St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County*, 348 Ark. 197, 205, 73 S.W.3d 584, 589 (2002) (citing *Murrell v. Springdale Mem'l Hosp.*, 330 Ark. 121, 952 S.W.2d 153 (1997)). *See also Rhuland v. Fahr*, 356 Ark. 382, 389, 155 S.W.3d 2, 6 (2004) (explaining that the wrongful-death statute does not create an individual right of any beneficiary to bring suit). Because individual heirs have no standing, when a complaint is filed by fewer than all of the decedent's heirs at law, the complaint is a nullity. *Brewer*, 362 Ark. at 15, 207 S.W.3d at 466.

The facts in *Brewer* are very similar to those in the instant case. There, a claim for wrongful death was filed before a personal representative had been appointed. The plaintiffs included some, but not all, of the deceased's heirs. Subsequently, an amended complaint was filed (after the statute of limitations had expired) that substituted all of the heirs as plaintiffs. The defendants moved for dismissal based on the omission of some of the heirs as party plaintiffs in the original complaint and that when the complaint was amended to include the omitted heirs, the statute of limitations barred the action. The trial court granted the motion, and the supreme court affirmed, holding that all of the heirs at law must be parties to the wrongful-death suit or the complaint is a nullity. *Brewer*, 362 Ark. at 14–15, 207 S.W.3d at 466. The *Brewer* court further held that because the null complaint never existed, it did not toll the statute of limitations and that the amended complaint—filed after the statute of limitations had expired—had nothing to amend or relate back to; therefore, the claim was forever barred. *Id.*, 207 S.W.3d at 466.

■ Based on the above, it is clear in the instant case that the wrongful-death complaint filed by Mendez and Eugene in April 2009 is a nullity. Arkansas law requires that when there is no personal representative appointed, all of the statutory beneficiaries be named as plaintiffs, and this did not occur. Four siblings of Morse were omitted as party plaintiffs in the suit. A complaint that is a nullity "never existed." *Davenport*, 348 Ark. at 164, 72 S.W.3d at 94. Therefore, the April 2009 complaint never existed.

■ Acknowledging the problems with the April 2009 complaint, Mendez responds by arguing that it was timely amended by the November 3, 2009 order of substitution. Mendez is incorrect. There can be no amendment or relation back to a null complaint because there is no complaint to amend or correct. *St. Paul Mercury Ins. Co.*, 348 Ark. at 204, 73 S.W.3d at 588. Furthermore, Arkansas

case law specifically holds that when an action is filed by an improper plaintiff, an amendment that substitutes the proper party as a plaintiff does not relate back to the date the defective complaint was filed. *Rhuland,* 356 Ark. at 391–92, 155 S.W.3d at 8–9; *St. Paul Mercury Ins. Co.,* 348 Ark. at 204–06, 73 S.W.3d at 588–89.

However, Mendez claims that the rule set forth in *St. Paul Mercury* and *Rhuland* does not apply to her case because the "amendment" in her case (the order of substitution) was entered within the statute of limitations, and the amendments in *St. Paul Mercury* and *Rhuland* were not. What Mendez fails to recognize is that in *St. Paul Mercury* and *Rhuland,* the plaintiffs filed *amended complaints* that were considered new actions that included not only the proper party plaintiffs, but also included allegations pleading their causes of action.[4] In contrast, Mendez did not file an amended complaint on November 3, 2009, listing the proper party plaintiffs and causes of action against the appellees. Instead, she relies upon an order of substitution entered by the trial court on November 3, 2009, that merely substituted Mendez, in her capacity as the administratrix of Morse's estate, as the party plaintiff. The order of substitution failed to allege any facts supporting the wrongful-death action.[5] As such, the record lacked a pleading—that was not null and void—that contained allegations of malpractice against the appellees herein.[6]

Assuming arguendo that the trial court's order of substitution contained or referenced sufficient facts that could be construed as the filing of a new action, summary judgment in favor of the appellees is still appropriate because the facts in this case are undisputed that the order of substitution was entered after the statute of limitations expired. The filing of an amended complaint that substitutes out the plaintiffs and substitutes in entirely new plaintiffs constitutes the commencement of a new suit. *Hackelton,* 364 Ark. 469, 476, 221 S.W.3d 353, 358 (2006); *St. Paul Mercury Ins. Co.,* 348 Ark. at 206, 73 S.W.3d at 589; *Rhuland,* 356 Ark. at 391–92, 155 S.W.3d at 8. A new complaint cannot relate back to a previously filed nullity; the new complaint with the substituted parties must, itself, be filed timely. *Hackelton,* 364 Ark. at 476, 221 S.W.3d at 358; *St. Paul Mercury Ins. Co.,* 348 Ark. at 206, 73 S.W.3d at 590; *Rhuland,* 356 Ark. at 393, 155 S.W.3d at 9.

The statute of limitations for a claim for medical injury is two years. Ark.Code Ann. § 16–114–203(a) (Repl.2006). The date of the accrual of such a cause of action shall be the date of the wrongful act complained of and no other time. Ark. Code Ann. § 16–114–203(b). "It has long been the law in Arkansas that the statute of limitations begins to run from the date that the negligent act occurred." *Harris v. Ozment,* 83 Ark.App. 94, 98, 117 S.W.3d 647, 649 (2003).

---

4. The issue in *St. Paul Mercury* and *Rhuland* was that the amended complaints (although proper in form), which constituted new actions, were not filed within the statute of limitations.

5. Likewise, Mendez's motion to substitute parties also failed to allege any facts supporting the wrongful-death action.

6. We note that the order of substitution also did not incorporate by reference any of the allegations made in the original null complaint. *Hackelton v. Malloy,* 364 Ark. 469, 221 S.W.3d 353 (2006) (holding that a timely amended complaint that was filed by the proper party plaintiff and incorporated by reference allegations of a medical injury contained in the original null complaint was proper).

The facts in this case demonstrate that Dr. Glover performed two surgeries on Morse on June 28, 2007. Morse remained in the hospital following these surgeries until July 30, 2007. Therefore, the last treatment provided by Dr. Glover was July 30, 2007. As for Dr. Simonian, he performed a procedure on Morse on July 16, 2007, and the last treatment he provided to her was on July 19, 2007. Finally, the last treatment and care provided to Morse by Dr. Floyd was on September 5, 2007. Mendez failed to present any evidence to dispute these facts.

Significantly, at the summary-judgment hearing, Mendez's counsel admitted that there was no dispute concerning these physicians' last dates of treatment and that there was nothing in the medical records that indicated that there was continuing care after those dates. Therefore, the statute of limitations as to Dr. Glover expired July 30, 2009; the statute of limitations as to Dr. Simonian expired July 19, 2009; and the statute of limitations as to Dr. Floyd expired September 5, 2009. Therefore, assuming for the sake of argument that the order of substitution constituted a new action, it was entered November 3, 2009—after the statute of limitations expired.

In her brief on appeal, Mendez states that "[i]t is undisputed that the order substituting Ms. Mendez as Plaintiff was entered before the two (2) year statute of limitations for medical malpractice claims expired." She bases this statement on the doctrine of continuing course of treatment, which she claims extended the statute of limitations for all three physicians to November 3, 2009—the date the order of substitution was entered—beyond the dates Drs. Glover, Simonian, and Floyd actually provided treatment to Morse. Our supreme court defined the continuous-course-of-treatment doctrine:

[I]f the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated—unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

*Pledger,* 362 Ark. at 188–89, 208 S.W.3d at 103. For the continuous-course-of-treatment doctrine to apply and extend the statute of limitations, a plaintiff must show a continuous course of treatment *and* a continuing duty of care. *Tullock v. Eck,* 311 Ark. 564, 569, 845 S.W.2d 517, 520 (1993) (emphasis added) (citing 1 D. Louisell & H. Williams, *Medical Malpractice* § 13.08 (1982)). If both elements are established, the two-year statute of limitations does not begin to run until the continuous course of treatment is terminated. *Tullock,* 311 Ark. at 569, 845 S.W.2d at 520.

Mendez cannot establish the first element of the continuous-course-of-treatment doctrine, i.e., she cannot establish that Drs. Glover, Simonian, and Floyd provided continuous treatment to Morse up to November 3, 2009. First, Mendez (in the original and null complaint) did not plead any facts supporting the extension of the statute of limitations pursuant to the continuous-course-of-treatment doctrine. Second, the undisputed proof established, as set forth above, that Drs. Glover, Simonian, and Floyd last treated Morse on July 30, July 19, and September 5, 2007, respectively. Finally, Mendez's counsel admitted that there was no medical evidence to refute those dates and no medical evidence

that indicated that there was continuing care beyond those dates.

Regarding the second element of the continuous-course-of-treatment doctrine, Mendez argues that appellees had a duty to continue to provide medical treatment and care to Morse beyond the last dates of treatment. However, Mendez presented no proof establishing that duty or what those "continuing" dates are or might be. As such, Mendez failed to meet proof with proof on her claim that the continuous-course-of-treatment doctrine was applicable to extend the statute of limitations to November 3, 2009, and we affirm the trial court's summary-judgment finding that the order of substitution (assuming it pled a new action) was barred by the limitations period.

Mendez's final point on appeal is that the trial court erred in granting summary judgment against her because she was not provided an adequate opportunity for discovery. She argues that medical-malpractice actions are "complex ... and highly dependent upon detailed factual investigation and expert analysis and testimony." She asserts that at a minimum, the parties should have an adequate opportunity to fully engage in discovery before a court may consider summary judgment on liability and damages issues. Citing *Pledger*, Mendez maintains that the granting of summary judgment was premature because the facts were not sufficiently developed for the trial court to determine whether summary judgment was appropriate. Specifically, Mendez argues that summary judgment was premature because discovery is needed to determine if there is proof supporting her claim that the continuous-course-of-treatment doctrine applies in this case.

Despite Mendez's recognition of the importance of discovery, Mendez admits that after she filed the initial complaint in April 2009, she did not propound any discovery to appellees. She further admits that other than answering some requests for admission and providing a medical-records release to appellees, she failed to answer interrogatories and requests for production that were propounded by appellees in April and May 2009. She acknowledges that discovery was "dormant" from that time until mid-January 2010 when appellees filed motions to compel the responses. However, Mendez points out that Drs. Glover and Simonian "were content to sit on their hands and not pursue discovery between midsummer 2009 and January 13, 2010"; that they elected to "lay behind the log"; and that they should not now be allowed to complain that Mendez was not diligent.

The trial court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed absent abuse of discretion that is prejudicial to the appealing party. *Loghry v. Rogers Group, Inc.*, 348 Ark. 369, 373, 72 S.W.3d 499, 501 (2002). We hold that the trial court did not abuse its discretion in rejecting Mendez's request for additional time to conduct discovery based on its finding that she had not been diligent in discovery. There is no question here that Mendez did not diligently engage in the discovery process. Ten months into the case, she failed to propound or conduct her own discovery, and she failed to answer appellees' discovery. "[L]ack of diligence [is] a factor to consider in weighing the propriety of a continuance of the trial for the purpose of pursuing additional discovery." *Jenkins v. Int'l Paper Co.*, 318 Ark. 663, 669, 887 S.W.2d 300, 303 (1994).

Also, Mendez has failed to show how she was prejudiced, i.e., how additional discovery would have changed the outcome of the case. *Jenkins*, 318 Ark. at 669, 887 S.W.2d at 303. Mendez's counsel stated at the hearing that there were no medical

reports that refuted the appellees' last dates of treatment and that there was no medical evidence that indicated that there was continuing care beyond those dates. Therefore, Mendez's claim of the continuous-course-of-treatment doctrine is sheer speculation, unsupported by any proof.

The case at bar is distinguishable from *Pledger*, upon which Mendez relies. In *Pledger*, the supreme court reversed an order of summary judgment in favor of the defendants, holding that dismissal was premature. Like the instant case, *Pledger* was a medical-malpractice, wrongful-death action. However, unlike the case at bar, the plaintiff in *Pledger* actually engaged in discovery. The plaintiff propounded written discovery to the defendants requesting medical records, and the defendants had yet to provide discovery responses. Furthermore, the defendants requested depositions of plaintiff's expert witnesses. Before this discovery was completed, summary judgment was granted.

On appeal, our supreme court reversed summary judgment, holding that the plaintiff had been "denied the benefit of completing the discovery that ... would have allowed him to develop, if obtainable, the necessary proof in this case." *Pledger*, 362 Ark. at 192, 208 S.W.3d at 105. To the contrary, in the case at bar, Mendez was not denied the opportunity to complete discovery. Mendez never initiated any discovery, and, other than answering requests for admission, she did not respond to appellees' discovery. Accordingly, we hold that the trial court did not abuse its discretion in denying Mendez's request for additional time to conduct discovery.

Affirmed.

GLADWIN and HENRY, JJ., agree.